[No. 918.   Decided April 25, 1893.]

THE STATE OF WASHINGTON, *on the relation of the City of Seattle, Appellant,* v. JAMES M. CARSON, *Respondent.*

MUNICIPAL CORPORATIONS — CITIES OF FIRST CLASS — COLLECTION OF TAXES BY COUNTY TREASURER — CONSTITUTIONAL LAW.

The act of March 9, 1893, entitled "An act to provide for the assessment and collection of taxes of cities of the first class, and specifying the duties of certain county officers in regard thereto," does not violate any constitutional provision relating to municipal corporations, as it leaves the power to impose taxes unaffected, but works an amendment to all conflicting provisions of charters of cities of the first class upon the subject of the assessment and collection of taxes.

A legislative act which provides that the county treasurer shall be charged with the duty of assessing and collecting city taxes, and that the city shall pay him therefor the sum of $500 per year, does

not violate the constitutional inhibition against increasing the compensation of any public officer during his term of office.

The act of March 15, 1893, repealing "all acts and parts of acts heretofore enacted by the legislature of the Territory or State of Washington providing for the assessment and collection of taxes in this state," affects laws relating to state taxation generally, and has no application to the special provisions of the law of March 9, 1893, relating to the collection of taxes in cities of the first class.

*Appeal from Superior Court, King County.*

*Battle & Shipley*, for appellant.

*George Donworth*, and *James B. Howe*, for respondent.

The opinion of the court was delivered by

Scott, J.— This is a cause just heard upon a special assignment, and the necessity for an immediate decision prevents an elaborate discussion of the questions involved, and a full review of the authorities.    It is contended by appellant that an act of the recent legislative assembly, approved March 9, 1893, entitled "An act to provide for the assessment and collection of taxes of cities of the first class, and specifying the duties of certain county officers in regard thereto, and declaring an emergency," (Laws 1893, p. 167) is without effect for the several reasons hereinafter mentioned.

*First*, That it is void as being in contravention of the inherent right of a municipal corporation to regulate its affairs which are purely local, and that it conflicts with § 10, art. 11, of the constitution of the state, which provides that:

"Corporations for municipal purposes shall not be created by special laws; but the legislature, by general laws, shall provide for the incorporation, organization and classification, in proportion to population, of cities and towns, which laws may be altered, amended, or repealed.    Cities and towns heretofore organized or incorporated may become organized under such general laws whenever a major-

ity of the electors voting at a general election shall so determine, and shall organize in conformity therewith; and cities or towns heretofore or hereafter organized and all charters thereof framed or adopted by authority of this constitution shall be subject to and controlled by general laws. Any city containing a population of twenty thousand inhabitants or more shall be permitted to frame a charter for its own government consistent with and subject to the constitution and laws of this state,'' etc.

Appellant contends that cities of the first class organized under freeholders' charters are not within the clause which provides that cities and towns heretofore or hereafter organized, and all charters thereof framed or adopted by authority of this constitution, shall be subject to and controlled by general laws. Appellant contends that such cities have the right of local self-government, and that the legislature cannot interfere therewith; that they are subject to the constitution and general laws of the state, but that the words ''controlled by'' were not intended to apply to such cities; that the words ''subject to'' and ''controlled by'' are not synonymous, either in their ordinary meaning or as therein intended; that it is significant that in the third paragraph, where specific provision is made for cities of over twenty thousand inhabitants, the word ''controlled'' is dropped, and charters of such cities are only required to be ''consistent'' with, and ''subject'' to, the constitution and laws of the state; that strictly speaking, the words ''subject to'' do not involve the idea of power to ''direct'' or ''govern.'' And as further sustaining the contention that cities forming their own charters are not to be ''controlled'' by the legislature in the regulation and management of the affairs of the municipality, and its rights to prescribe the name and number of its officers and *require* them to perform certain duties, we have but to take into consideration the fact that the legislature must control all cities not having a population of twenty thousand inhabit-

ants or more, for the reason that such cities have no power to adopt their own charters, while the latter mentioned cities have such power, and such charter, when adopted, is for its own ·'government'' and the ''organic law thereof,'' which facts could not exist consistent with the right of the legislature to enact laws for the ''government'' thereof, which shall be the ''organic law thereof;'' and such would be the logical and legal result, if the legislature has the power to pass a law of the nature of the one in question, which both logically and legally does ''direct'' and ''govern'' the matter of the assessment and collection of the city taxes of the city of Seattle, depriving the city comptroller of the power to assess city property for city taxes, and the city treasurer of the power to collect such taxes; that assuming that cities of twenty thousand or more inhabitants are ''subject to,'' but are not to be ''controlled'' by, the legislature, what is the correct meaning of the words ''subject to?'' that there are certain well defined powers and duties belonging to, and exercised by, municipal corporations, some of which rights, powers and duties concern solely the municipality, while in some others the state has a joint interest; that the sole and exclusive exercise by the municipality of the former, must exist without let or hindrance, else the constitution makers and legislators must be considered as performing vain and useless tasks in providing for the formation of municipal corporations.     There are other rights, powers and duties, however, which such municipalities do not ordinarily possess, and which the due and orderly administration of the affairs of government require they should not have, or if they do have and possess, are of such a nature that in the exercise thereof the people of the state at large are also interested, and so far as regards these matters they are ''subject to,'' and should be ''subject to,'' the constitution and laws of the state.     The very term, however, ''subject to,'' implies a *separation*

from the state at large for certain purposes, and also unnecessarily implies an *independent* separation for the exercise of some rights and powers, otherwise a provision of the constitution making them "subject to" would be a wholly useless and unnecessary provision. That, for instance, § 2, of article 7 of the constitution, provides that "the legislature shall provide by law a uniform and equal rate of assessment and taxation on all property in the state, according to its value in money," etc. The legislature passes such a law. The city of Seattle would be "subject to" the provisions of this law, in the particular that assessments and taxation shall be uniform and equal, etc., because it involves a principle of right which the state is interested in having enforced. But the time of making such assessment, collecting such taxes, and the instrumentalities and agencies which cities having charters may therein provide for the accomplishment thereof, involves merely local and purely ministerial powers and duties, and in these particulars such cities are *not* "subject to" the constitution and laws of the state, because (1) they have these rights in the absence of a constitutional inhibition, and (2) the constitution affirmatively gives to them these rights in the formation of charters for their "own government."

The construction contended for by appellant is against the weight of authority, however, and is also against public policy, in our opinion. Substantially the same provision as the one quoted from our constitution is contained in the constitutions of California and Missouri, and in these states the right of the legislature to amend the charters of such cities has been recognized and is established. The constitution of California differs from ours in that it requires such charters and amendments thereto to be submitted to the legislature for approval or rejection, and for that reason appellant argues that the California cases are without force here. But in construing this provision the courts of that

state have placed the right of the legislature to amend these charters upon the clause that such cities "shall be subject to and controlled by general. laws," and it seems to us that the intention was to include all cities in said clause, from the language of the section, regardless of its construction elsewhere. *Thomason v. Ashworth*, 73 Cal. 73 (14 Pac. Rep. 615); *Ex parte Ah You*, 82 Cal. 339 (22 Pac. Rep. 929); *Davies v. City of Los Angeles*, 86 Cal. 37 (24 Pac. Rep. 771); *State, ex rel. Kansas City, v. Field*, 99 Mo. 352 (12 S. W. Rep. 802); *City of Westport v. Kansas City*, 103 Mo. 141 (15 S. W. Rep. 68); *Ewing v. Hoblitzelle*, 85 Mo. 64.

Appellant further contends that said act is void because it is in conflict with § 9 of art. 7 and § 12 of said art. 11 of the constitution, which are as follows:

"Sec. 9. The legislature may vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessment, or by special taxation of property benefited. For all corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes, and such taxes shall be uniform in respect to persons and property within the jurisdiction of the body levying the same."

"Sec. 12. The legislature shall have no power to impose taxes upon counties, cities, towns, or other municipal corporations, or upon the inhabitants or property thereof, for county, city, town, or other municipal purposes, but may by general laws vest in the corporate authorities thereof the power to assess and collect taxes for such purposes."

Appellant quotes from the case of *Baker v. Seattle*, 2 Wash. 576 (27 Pac. Rep. 462), as follows:

"The constitution of the State of Illinois in 1848 contained the clause above quoted from article 7 [§ 9 of the constitution] *in haec verba*, and in that state there are many well considered cases which hold that it is incompetent for the legislature to directly lay any burden of taxation for

municipal purposes upon the cities of that state. See *People v. Mayor, etc.*, 51 Ill. 17. In other states not having such a constitutional provision the power of the legislature over municipal corporations has, in some cases, been held to be well nigh omnipotent, as in *Sage v. Brooklyn, supra*. We find no case, however, in which such a constitutional expression occurs as is contained in our article 11 [ § 12 ] above quoted, and whatever may be thought elsewhere of the Illinois decisions above quoted, they would seem to be cogent authority here.''

And argues that similar legislation has been held void in Illinois under the provision mentioned, and he cites the following decisions from that state. *Harward v. St. Clair, etc., Drainage Co.*, 51 Ill. 130; *People, ex rel. Wilson, v. Salomon*, 51 Ill. 37; *Lovingston v. Wider*, 53 Ill. 302; *People, ex rel. Wider, v. Canty*, 55 Ill. 33; *Wider v. East St. Louis*, 55 Ill. 133; *Gage v. Graham*, 57 Ill. 144; *People, ex rel. Dunham, v. Morgan*, 90 Ill. 558; *Cornell v. People, ex rel. Walsh*, 107 Ill. 372. But an examination of these cases shows that the objections raised did not go to the valuation of property for the purposes of taxation, or to the mere collection of a tax. The objections were to the creation of debts which were to be satisfied by means of taxation, or were to the creation of a tax.

Respondent admits that the legislature has no power to authorize the officers of the county to levy a tax upon persons or property in the city of Seattle for corporate purposes of the city. But contends that the legislature may impose upon county officials the duty of collecting a tax levied by the city. He calls our attention to the fact that, subsequent to the decisions mentioned, the legislature of Illinois, under the constitution of 1870, containing substantially the same provisions in this respect as the constitution of 1848, enacted a law identical in purpose with the law under consideration here, and that for many years this act has remained the law of that state unquestioned.

The respondent contends that the argument of appellant rests upon an incorrect interpretation of the words "to assess and collect taxes" used in the provisions of the constitution of Washington.    And he argues that as the power of taxation is .a legislative power, and as all legislative power is by the constitution vested in the legislature, were it not for the said provisions of the constitution the legislature could tax municipal corporations for corporate purposes.    That the right which is denied to the legislature is the power *to impose taxes* upon municipal corporations for corporate purposes.    The power denied to the legislature is the power it is permitted to vest in the corporate authorities.    The use of the word "but" after the denial of the power of the legislature requires this construction. That the expression "to assess and collect taxes" must then mean "to impose and collect taxes," and that this construction is indirectly sustained by the Illinois authorities.    So long, therefore, as the tax is imposed by the corporate authorities, the evil sought to be avoided by the constitutional provisions is not incurred.    Respondent contends that the expression "to assess" does not mean the making of an assessment in the sense of a valuation.    The word assess has two meanings—(1) To charge; (2) to value.    And if we substitute in the constitution the meaning of the expression for the expression itself, we have in the one case, sense, and the other, nonsense, thus:

1.  "The legislature shall have no power to impose taxes upon  .  .  .  municipal corporations for  .  .  .  municipal purposes, but may, by general laws, vest in the corporate authorities the power to *charge* and collect taxes for such purposes."

2.  "The legislature shall have no power to impose taxes upon  .  .  .  municipal corporations for municipal purposes, but may, by general laws, vest in the corporate authorities the power *to value* and collect taxes."

That the power to value taxes would be meaningless,

17—6 WASH.

but the power to charge taxes is perfectly clear. The argument advanced by the respondent strikes us as sound, and we agree with him that it is the power to collect taxes which must be vested in the corporate authorities. And as the act makes it the *duty* of the treasurer to collect the tax levied, by so doing it vests in the corporate authorities of the city the power to collect by giving it the machinery for the collection. It by no means follows that because the corporate authorities are to be vested with the power to collect the tax, that therefore they must themselves be the machinery for its collection. The act of collection and the power to compel the act are not identical.

Appellant further contends that said act is in violation of § 8, article 11 of the constitution, which provides that "the salary of any county, city, town or municipal officer shall not be increased or diminished after his election or during his term of office," etc., and also § 25, article 2, which provides: "Nor shall the compensation of any public officer be increased or diminished during his term of office;" and also the first part of § 12, article 11, which denies to the legislature the right "to impose taxes upon counties, cities," etc.

Sec. 10 of this act of the legislature (Laws 1893, p. 170) provides that each city shall pay to the county treasurer for duties performed by him in the collection of city taxes $500 per year, which shall be in addition to the salary otherwise provided by law. We do not think there is any conflict here, as the additional salary is not paid to the county treasurer as county treasurer, but new duties have been imposed upon him in the way of collection of city taxes, and the additional compensation is provided therefor, a matter which is entirely outside of his former duties as county treasurer for which his previous salary was fixed.

We doubt whether this provision can be held to be the imposition of a tax within the prohibition of the sections

aforesaid; if it is, it would not render the entire act invalid, but would only annul the provision itself. Little importance seems to have been attached to this question by the appellant as it was not argued at the hearing and the point is simply stated in its brief without any argument.

It is further claimed that the act was repealed by the general revenue law, approved March 15th (Laws 1893, p. 385), which contains the following provision:

"SEC. 137. All acts and parts of acts heretofore enacted by the legislature of the Territory or State of Washington providing for the assessment and collection of taxes in this state shall be and the same are hereby repealed."

If the legislature had intended by this act to repeal the previous act approved March 9th, it most likely would have done so in such a way as to leave no room for doubt. This repealing clause is evidently directed to laws relating to state taxation operating generally in all parts of the state, and not to a law like the one in question which is special in the sense that it applies only to cities of the first class, but which nevertheless does not come within the constitutional prohibition of special legislation, for it is general as affecting all of such cities.

The judgment of the superior court is affirmed.

HOYT and ANDERS, JJ., concur.

DUNBAR, C. J., and STILES, J., absent.