[No. 31425. Department One. November 30, 1950.]

THE CITY OF EVERETT, *Respondent*, v. WILLIAM A. JOHNSON et al., *Appellants*.[1]

*Clarence Coleman* and *Wm. A. Johnson*, for appellants.

*Leslie R. Cooper*, for respondent.

HILL, J.—This is an action by the city of Everett to recover from a justice of the peace who was also police judge, all salary payments made to him by the city in excess of his salary as such police judge at the beginning of his term of office.

Everett is a city of the first class with a population of less than fifty thousand. Two justices of the peace are elected in each such city and their salaries are twelve hundred dollars a year. Rem. Rev. Stat., §§ 7564, 7571 [P.P.C. §§ 157-

[1]Reported in 224 P. (2d) 617.

23, -61]. Rem. Supp. 1941, § 8992 [P.P.C. § 151-27], provides that the mayor of each city of the first class shall, within ten days after the general election at which such justices of the peace are elected, appoint one of them as police judge. His term of office as police judge is coextensive with the term as justice of the peace for which he has been elected, and the mayor has no power of removal. *State ex rel. Evans v. Superior Court*, 92 Wash. 375, 159 Pac. 84. The salary of such police judge to be paid in addition to his salary as justice of the peace is fixed by the city and is paid wholly out of its funds. Rem. Rev. Stat., § 8997 [P.P.C. § 151-49].

The police judge is given exclusive jurisdiction over all offenses defined by any ordinance of the city. Rem. Rev. Stat., § 8993 [P.P.C. § 151-31]. It is to be kept in mind that this does not add to his jurisdiction as justice of the peace, but does exclude the other justice or justices of the peace within the city from exercising a jurisdiction which would otherwise be theirs. See *State ex rel. Evans v. Superior Court, supra.*

William A. Johnson was elected as one of the justices of the peace for Everett in November, 1942, and was appointed by the mayor of Everett to serve as police judge for a term of four years commencing in January, 1943. The salary of the police judge, as fixed by city ordinance at the time of Johnson's appointment, was twelve hundred dollars a year. During his first term this salary was raised several times, reaching eighteen hundred dollars during 1946. He was re-elected justice of the peace in 1946 and was reappointed police judge for a four-year term commencing in January, 1947. At the time of his reappointment, the salary of the police judge was set at nineteen hundred twenty dollars a year, and it was increased to twenty-one hundred dollars for 1948. All these salary increases were part of blanket increases given to all employees of the city.

There is no doubt that the increased volume of work in the Everett police court amply justified the salary increases, entirely apart from any consideration of the decrease in the purchasing power of the dollar. However, the city of Ev-

erett commenced this action March 2, 1949 (reluctantly, it would seem), to recover from Judge Johnson and his wife all salary payments in excess of twelve hundred dollars a year during the 1943-1946 term and in excess of nineteen hundred twenty dollars a year during the term beginning in January, 1947, the total recovery sought being twelve hundred ninety dollars. ·

The basis for this action by the city is our state constitution, Art. II, § 25, which is:

"The legislature shall never grant any extra compensation to any public officer, agent, servant, or contractor after the services shall have been rendered or the contract entered into, *nor shall the compensation of any public officer be increased or diminished during his term of office.*" (Italics ours.)

The trial court found that all claims for overpayments made prior to March 2, 1946, were outlawed by the statute of limitations, but gave the city judgment for all such overpayments as were subsequent to that date, to wit, $620.

No appeal was taken by the city of Everett from that portion of the judgment adverse to it, but Judge and Mrs. Johnson appealed from the judgment against them. We shall hereinafter refer to Judge Johnson as though he were the only appellant.

As was aptly said in *Harbert v. Harrison County Court,* 129 W. Va. 54, 62, 39 S. E. (2d) 177, 185, in a discussion of a similar constitutional provision:

"The command of the Constitution that the salary of no public officer shall be increased or diminished during his term of office, is a wise and salutary mandate. Its purpose is to establish definiteness and certainty in the salaries of public officers and to protect and safeguard the independence, the security, and the efficiency of the occupant of every public office. It assures the people that those who serve them as public officers shall give their services during their terms for the amount of compensation for which they were willing to serve and have been selected, and for which they were expected by the people to serve at the time of their entrance upon the performance of their duties. It prevents attacks upon officials by those who may be pos-

sessed, at any time, of the means and will to influence or control their course of conduct through added income at public expense; and it removes the possibility of increasing in that manner the financial burden of the people by those who possess and exercise the power of government and the authority of public office. The benefits which result from the operation of this provision of the Constitution promote sound and orderly administration of government, and this provision may not be dispensed with, circumvented, or ignored."

See, also, *State ex rel. Livingston v. Ayer,* 23 Wn. (2d) 578, 588, 161 P. (2d) 429.

■ That a justice of the peace is a public officer is clear beyond question. Washington state constitution, Art. IV, § 10. This section of the constitution provides that justices of the peace may be made police justices of incorporated cities and towns.

■ Appellant urges that there was no attempt to raise the salary of a justice of the peace, but only that of a police judge, who, he insists, is not a public officer. We made it clear in *State ex rel. Evans v. Superior Court, supra,* that all the duties performed by a police judge are done in his capacity as a justice of the peace, and it necessarily follows that his salary as police judge is for services which he renders as justice of the peace. In that case we said:

"But the fundamental error in the position assumed by respondents is that they seem to conceive that the office of justice of the peace, and police justice are two offices, the one held at the suffrage of the people, the other at the will of the appointing power.

"There is but one office, that of justice of the peace. That he exercises jurisdiction over violations of city ordinances in no way changes his official character or his office. The framers of the constitution, foreseeing that the time would come in all cities when the convenience of the public would demand that the jurisdiction then exercised by all justices of the peace in corporate limits should be exercised by one or more of them, declared (art. 4, § 10) that the legislature should provide for the number of justices of the peace to be elected in incorporated cities and towns, and prescribe by law their powers, duties and jurisdiction, and further, that 'justices of the peace may be made police justices of

incorporated cities and towns.' No new office was created. The justice who is selected as police justice is exercising the same jurisdiction that he would have exercised if none of the justices had been selected as police justice; the only difference being that the legislature has provided a way in which the jurisdiction theretofore extending to all of the justices, shall, in so far as it relates to city ordinances, licenses, etc., be exclusively exercised by one of them. Necessarily some method of selection confronted the legislature. It passed the act of 1899, saying that the mayor should appoint a police justice, from among the whole number having jurisdiction of the subject-matters to be considered, who should thereafter be privileged to exercise such jurisdiction exclusively."

Appellant relies upon the case of *State ex rel. Seattle v. Carson*, 6 Wash. 250, 33 Pac. 428, wherein a law was upheld which provided that city taxes should be assessed and collected by the county treasurer and gave that officer an additional five hundred dollars, to be paid by the city, for performing that function, which law became effective during the term for which the county treasurer had been elected.

The *Carson* case can be distinguished from the case at bar by the fact that the additional compensation was for additional duties absolutely extrinsic and in no way connected with the performance of Carson's duties as county treasurer, while the duties of this appellant were identical before and after his salary increases were authorized.

We have never overruled *State ex rel. Seattle v. Carson*, *supra*, but from 1894 to the present time we have insisted that the doctrine enunciated in that case should not be extended. *Spokane County v. Allen*, 9 Wash. 229, 37 Pac. 428, 43 Am. St. 830; *State ex rel. Younger v. Clausen*, 111 Wash. 241, 190 Pac. 324; *State ex rel. Livingston v. Ayer*, 23 Wn. (2d) 578, 161 P. (2d) 429.

We have held that new and greatly increased duties within the scope of a public office afford no justification for increased compensation during the term of the holder of that office. *Spokane County v. Allen*, *supra*; *State ex rel. Davis v. Clausen*, 47 Wash. 372, 91 Pac. 1089; *State ex rel.*

*Funke v. Board of Commissioners,* 48 Wash. 461, 93 Pac. 920; *State ex rel. Younger v. Clausen, supra.*

It is to be noted that it is not the respondent's position that the appellant should not be compensated for his extra duties as police judge, but merely that the compensation cannot be increased during appellant's term of office.

The section of the constitution relied upon by respondent is part of Art. II, which is entitled "Legislative Department." The sections in Art. II relate to the state legislature, and it is argued by appellant that, therefore, the section thought to be applicable refers only to actions by the legislature. That identical argument was advanced in the West Virginia case, *Harbert v. Harrison County Court,* heretofore cited, and it was there answered in these words:

"Little importance, if any, results from the position in the Constitution of Section 38 of Article VI of that instrument; but controlling effect must be given, without reference to its position in the Constitution, to its plain and unmistakable language. In express terms, and in language too clear to admit of speculation or interpretation, the people of this State, in the exercise of their sovereign power, have said: 'Nor shall the salary of any public officer be increased or diminished during his term of office'. Though these words of ordinary import and meaning are perhaps directed to the Legislature because placed in the article dealing with that department of government, they are comprehensive and they are not so limited in their application. They apply to all the agencies of the government."

That declaration of the West Virginia supreme court states our own views.

In *State ex rel. Younger v. Clausen, supra,* the section of the constitution immediately involved was Art. II, § 25; but it was there pointed out that it is the positive policy of the constitution, definitely expressed, that the salaries of officers should not be increased during their term of office, and reference was made, as evidencing that fact, to Art. III, § 25, Art. IV, § 13, and Art. XI, § 8.

We are here concerned with a positive policy of the constitution expressed, as was said in *State ex rel. Davis v.*

*Clausen, supra,* "in every possible way," and no increase of compensation, however meritorious, can be permitted to a public officer during the term for which he has been elected or appointed.

The judgment is affirmed.

BEALS, ROBINSON, SCHWELLENBACH, and DONWORTH, JJ., concur.

---

January 15, 1951. Petition for rehearing denied.