## ST. LOUIS & SAN FRANCISCO RAILWAY COMPANY *v.* PUBLIC SERVICE COMMISSION OF THE STATE OF MISSOURI.

ERROR TO THE SUPREME COURT OF THE STATE OF MISSOURI.

No. 117. Submitted December 9, 1920.—Decided January 17, 1921.

An order of a state public service commission requiring an interstate railroad to detour two of its through passenger trains from its main line over a branch for the benefit of a small city already adequately served by local, connecting trains, *held*, void as an undue burden on interstate commerce. P. 536.

277 Missouri, 264, reversed.

THE case is stated in the opinion.

*Mr. William F. Evans* and *Mr. Edward T. Miller* for plaintiff in error.

*Mr. James D. Lindsay* for defendant in error. *Mr. R. Perry Spencer* was also on the brief.

MR. JUSTICE McREYNOLDS delivered the opinion of the court.

Plaintiff in error's main line extends from St. Louis to Memphis—305 miles. As originally constructed it turned sharply southeastward at Hayti, Missouri—220 miles from St. Louis—ran thence seven miles to Caruthersville, a city of four thousand people, thence southwestward nine miles to Grassy Bayou and thence south. A "cut-off" between Hayti and Grassy Bayou—six miles—became part of the main line in 1904 and thereafter through freight and night passenger trains passed that way. The through day passenger trains—Nos. 801 and 802—continued to

move along the old line until August, 1913, when they were routed over the "cut-off." At the same time two new daily passenger trains were put on and operated between Blytheville, Arkansas, and Cape Girardeau, Missouri, by way of Caruthersville.

The Missouri Public Service Commission directed the Railway Company to restore trains 801 and 802 to the route followed prior to 1913 and the State Supreme Court approved this action. We are asked to declare the order invalid because it unduly burdens interstate commerce. The point is well taken.

Fourteen local daily passenger trains move in and out of Caruthersville—seven each way. Some of these make close connections with all through trains at Hayti. These locals do not carry equipment of the highest class, but apparently they afford fair facilities for reaching and leaving Caruthersville without serious delay or great inconvenience. If deficient in schedule or equipment there is an easy remedy by means other than detours of the through trains.

The applicable general doctrine has been often considered and in *Chicago, Burlington & Quincy R. R. Co.* v. *Wisconsin Railroad Commission*, 237 U. S. 220, 226, this court said:

"In reviewing the decision we may start with certain principles as established: (1) It is competent for a State to require adequate local facilities, even to the stoppage of interstate trains or the re-arrangement of their schedules. (2) Such facilities existing—that is, the local conditions being adequately met—the obligation of the railroad is performed, and the stoppage of interstate trains becomes an improper and illegal interference with interstate commerce. (3) And this, whether the interference be directly by the legislature or by its command through the orders of an administrative body. (4) The fact of local facilities this court may determine, such fact being necessarily in-

volved in the determination of the Federal question whether an order concerning an interstate train does or does not directly regulate interstate commerce, by imposing an arbitrary requirement. *Gladson* v. *Minnesota,* 166 U. S. 427; *Lake Shore R. R.* v. *Ohio,* 173 U. S. 285; *Atlantic Coast Line* v. *Nor. Car. Corp. Comm.,* 206 U. S. 1; *Mo. Pac. Ry.* v. *Kansas,* 216 U. S. 262; *Cleveland &c. Ry.* v. *Illinois,* 177 U. S. 514; *Mississippi R. R. Comm.* v. *Ill. Cent. R. R.,* 203 U. S. 335; *Atlantic Coast Line* v. *Wharton,* 207 U. S. 328."

Considering the facts disclosed we think it plain that the fourteen local passenger trains meet the reasonable requirements of Caruthersville and that the Commission's order unduly burdens interstate commerce. Compliance with it would require the Railway to maintain sixteen more miles of track at the high standard essential for the through trains, and to move the latter ten miles further with consequent delay and inconveniences all along the line. The burden certainly would not be less serious than those which were condemned in some if not all of the causes above referred to.

The judgment of the court below must be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed.*

MR. JUSTICE PITNEY and MR. JUSTICE CLARKE dissent.